**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re*: ARBAH HOTEL CORP. (d/b/a Meadowlands View Hotel, The View Hotel Inc., View Hotel Inc.), | Civil Action No. 23-20783 (JXN) |
| Debtor, | |
| CORINNE SILVERBERG, | **OPINION** |
| Appellant, | |
| v. | |
| ARBAH HOTEL CORP. (dba Meadowlands View Hotel, The View Hotel Inc., View Hotel Inc.), | |
| Appellee. | |

**NEALS**, District Judge

Before the Court is Appellant Corinne Silverberg's ("Appellant") appeal from the United States Bankruptcy Court for the District of New Jersey's (the "Bankruptcy Court") September 11, 2023 oral ruling (the "Oral Order") finding Appellant lacked standing to participate in the Debtor Arbah Hotel Corp.'s *dba* Meadowlands View Hotel, The View Hotel Inc., View Hotel Inc. ("Arbah", "Debtor", or "Appellee") bankruptcy proceeding. (ECF No. 1.) The Debtor opposed the appeal (ECF No. 5), and Appellant replied in further support (ECF No. 6). Jurisdiction is proper pursuant to 28 U.S.C. § 158(a). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Bankruptcy Court's Oral Order is **AFFIRMED**.

## I.    BACKGROUND[1]

Appellant is the daughter of Steven Silverberg ("Mr. Silverberg"). (Appellant's Opening Br. at 2, ECF No. 4.) On February 24, 2023, Arbah filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code in *In re Arbah Hotel Corp.*, Bankr. No. 23-11467 ("Bankruptcy Action"). (*See* Petition, Bankr. No. 23-11467, ECF No. 1.) Prior to and during the Bankruptcy Action, the New York Supreme Court, Nassau County ("Guardianship Court") adjudicated a guardianship petition ("Guardianship Petition") concerning the property and person of Mr. Silverberg.[2] That court appointed a temporary guardian ("Temporary Guardian") and a temporary receiver ("Temporary Receiver"), who were charged with protecting Mr. Silverberg's person and property and who obtained permission to act with respect to his interests in the Debtor. (*See* Order Appointing Temporary Guardian, Bankr. No. 23-11467, Ex. A, ECF No. 38-2; Order Appointing Temporary Receiver, Bankr. No. 23-11467, Ex. B, ECF No. 38-3.)

The Temporary Receiver filed a motion to dismiss the bankruptcy petition for lack of authority, which the parties resolved by Consent Order that left the case pending and provided that the Temporary Receiver would act cooperatively to protect Mr. Silverberg's property interests in the Bankruptcy Action. (Consent Order, Bankr. No. 23-11467, ECF No. 61.) Following that

---

[1] This background is derived from the Bankruptcy Record, which the parties have designated and submitted to this Court. (ECF No. 4-1.)

[2] Appellant had discovered that Mr. Wysocki—Mr. Silverberg's employee—had a power of attorney, and she suspected that Mr. Wysocki was abusing his authority through the power of attorney to financially exploit Mr. Silverberg. (Notice of Appearance & Objection ¶ 8, Bankr. No. 23-11467, ECF No. 120; Mot. To Dismiss ¶¶ 3-4, Bankr. No. 23-11467, ECF No. 38); *see also Matter of Newman (Steven S.)*, 77 Misc. 3d 1229(A), 181 N.Y.S.3d 442 (N.Y. Sup. Ct. 2022). On June 29, 2022, Appellant filed an *Order to Show Cause for Appointment of a Guardian* in the Supreme Court of the State of New York, County of Nassau, seeking to appoint herself as guardian for Mr. Silverberg, alleging that he was likely to suffer harm because he was unable to provide for his personal and property needs and could not understand and appreciate the nature of such inability (the "Guardianship Proceeding"). (Notice of Appearance & Objection ¶ 6; Mot. To Dismiss ¶ 3.)

During the pendency of the Guardianship Proceeding, Mr. Wysocki commenced bankruptcy proceedings for the Arbah Hotel without corporate authority. (Mot. To Dismiss ¶¶ 7-13.)   Mr. Wysocki was then removed by operation of a settlement reached in the Guardianship Proceeding negotiated with Appellant from operating or having any authority relating to the Debtor. (CLO Retention Application ¶ 15, Bankr. No. 23-11467, ECF No. 101-1.)

consent arrangement, the Debtor engaged a broker (Acadia) and later obtained court approval to retain Neil J. Bivona, Managing Director of RSR Consulting, LLC, as Chief Liquidating Officer ("CLO") to coordinate marketing and a sale. (Acadia Retention Order, Bankr. No. 23-11467, ECF No. 81; Debtor's Application to Retain RSR Consulting ("CLO Retention Application"), Bankr. No. 23-11467, ECF No. 101-1; RSR Consulting Retention Order ("CLO Retention Order"), Bankr. No. 23-11467, ECF No. 108.) The CLO Retention Order and the CLO Retention Application describe the CLO's authority to oversee the sale process and coordinate with the Temporary Receiver and the broker. (*See* CLO Retention Order at 2-4; CLO Retention Application ¶¶ 20-26.)

On August 25, 2023, the Debtor filed a motion seeking approval of a sale of the hotel and related assets. (Sale Mot. ¶ 25, Bankr. No. 23-11467, ECF No. 110-1.) The sale package included declarations from the Temporary Receiver and the broker describing the marketing campaign and the offers received. (Marano Decl. ¶ 26, Bankr. No. 23-11467, ECF No. 110-2; Arora-Akarte Decl. ¶ 21, Bankr. No. 23-11467, ECF No. 110-3.) Those materials show that one robust, non-contingent offer—initially for $22,501,000 with a $5,000,000 non-refundable deposit—was submitted and that the proposed Sale Agreement was executed and accompanied by a $5,000,000 escrow wire. (Sale Mot. ¶ 25; Marano Decl. ¶ 26; Arora-Akarte Decl. ¶ 21.)

Appellant filed a notice of appearance and a timely objection to the Sale Motion. (Notice of Appearance & Objection, Bankr. No. 23-11467, ECF No. 120.) After hearing argument, the Guardianship Court granted the Temporary Receiver authority to accept the offer of $22,501,000 with a $5,000,000 deposit—subject to Bankruptcy Court approval and to higher or better offers. (Guardianship Order Authorizing Sale at 1, Bankr. No. 23-11467, ECF No. 128, Ex. A.)

At the September 11, 2023 sale hearing, the Bankruptcy Court addressed Appellant's standing and concluded she lacked party-in-interest status under § 1109(b). (*See* Sale Mot. Hr'g

Tr. at 32:2–34:1, Bankr. No. 23-11467, ECF No. 144.) The Bankruptcy Court then heard testimony from the CLO, the purchaser, and at-the-hearing bidders; the purchaser increased its bid to $24,000,000, and the court approved the sale as proposed, in good faith, and consistent with the marketing and declaration evidence on the docket. (*See id*. at 38–45; 48–55; 74:22–23; 77:25–78:8.)[3]

On November 8, 2023, Appellant filed this appeal, claiming that the Bankruptcy Court erred in concluding that Appellant lacked party in interest standing. (Appellant's Opening Br. at 5.) The Debtor opposed the appeal (ECF No. 5), and Appellant replied in further support (ECF No. 6).

## II.   <u>LEGAL STANDARD</u>

A district court has jurisdiction over the final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (Bankr. D.N.J. 2005). This Court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re IT Group, Inc.*, 448 F.3d 661, 667 (3d Cir. 2006). A factual finding is considered clearly erroneous "when

---

[3] When ruling on the Sale Motion, the Court stated:

> The Court will proceed to address the merits of the proposed sale and the process envisioned by the debtor through representatives. I also want to note that notwithstanding whether Ms. Silverberg has standing or not to be heard in this matter, this Court would not be inclined to delay this sale. Placing the debtor at risk even if it's a small percentage risk of losing a potential purchaser, while the property lays vacant giving rise to continuing fiscal liability and potential vandalism[.] . . . I believe the New York state court saw the urgency in moving forward with the sale. This Court based on the declarations submitted agrees that there's an urgency in trying to put a limit on continuing potential vandalism, crime, fire, or damage to the property. But most importantly, this Court does not want to be in a position of having delayed this sale at the cost of a purchaser. We'll go through the process today to make sure that this is an active, fair marketing process for this property, sale process.

> (Sale Mot. Hr'g Tr. at 33:22-34:5; 34:13-21.)

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citation omitted). Where an issue presents mixed questions of law and fact, the Court applies the relevant standard to each component of the issue. *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995). "[T]he standard of review for a mixed question all depends [] on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396, 138 S. Ct. 960, 970 (2018). Where the mixed question "require[s] courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard . . . appellate courts should typically review a decision *de novo.*" *Id.* (citation omitted). In contrast, where the mixed question "immerse[s] courts in case-specific factual issues — compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address . . . multifarious, fleeting, special, narrow facts that utterly resist generalization . . . appellate courts should usually review a decision with deference." *Id.* (citations and internal quotation marks omitted).

Whether a litigant qualifies as a "party in interest" under 11 U.S.C. § 1109(b) is a legal question subject to plenary review, *see In re 388 Route 22 Readington Holdings, LLC*, No. 21-1244, 2023 U.S. Dist. LEXIS 117641, at *17 (D.N.J. July 10, 2023), while subsidiary findings concerning the record—such as who participated, what marketing occurred, and how bidding proceeded—are reviewed for clear error. *See In re IT Group*, 448 F.3d at 667. Standing is a threshold requirement in bankruptcy cases, as in all federal courts, and a party must first satisfy Article III by demonstrating a concrete and particularized injury that is actual or imminent, fairly traceable to the challenged action, and likely to be redressed by a favorable decision. *In re Global Indus. Techs.*, 645 F.3d 201, 210 (3d Cir. 2011) (citations omitted). Bankruptcy standing is further informed by § 1109(b), which is construed broadly but limits participation to those with a legally

protected interest that could be affected by the proceeding. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 n.21 (3d Cir. 2004); *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). While the parties identified in Section 1109(b) are not the only parties who may have standing in a Chapter 11 bankruptcy case, party in interest standing requires a showing that the person seeking to participate is "one who has a sufficient stake in the proceeding so as to require representation". *In re Global*, 645 F.3d at 210 (quoting *In re Amatex*, 755 F.2d at 1042). Courts have found that "party in interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *In re Refco Inc.*, 505 F.3d 109, 117 n.9 (2d Cir. 2007) (holding that investors of a creditor did not have "party in interest" standing under Section 1109(b) (citation omitted)).

## III.  DISCUSSION

### A. Appellant's Interest Is Contingent and Not a Present Legal Stake

Appellant's primary argument is that she should be permitted to litigate the sale because she is likely to be appointed as her father's permanent guardian and, in that role, would administer any residual interest in his guardianship estate. (*See* generally Appellant's Opening Br.) That potential future appointment is precisely what makes Appellant's asserted stake contingent. She does not claim present equity ownership, asserts no present claim against the bankruptcy estate, and points to no statutory provision that converts a future guardianship appointment into an immediate right to participate under § 1109(b). The Bankruptcy record confirms she asserted a *prospective* guardianship claim, but had not been appointed as of the sale hearing. (Sale Mot. Hr'g Tr. at 13:2–9.)

The Bankruptcy Court correctly treated Appellant's interest as contingent and attenuated. (*Id*. at 33:14–19.) The Third Circuit's governing test requires a direct, legally protected interest

that will be affected by the bankruptcy proceedings; speculative future roles do not satisfy that threshold. *In re Global*, 645 F.3d at 210 (requiring a concrete injury-in-fact). Here, Appellant's prospective guardianship is the product of a separate state court proceeding that had not, at the time of the sale hearing, culminated in her appointment; it is precisely that contingency which makes her proposed participation qualitatively different from the paradigmatic § 1109(b) participant. *See In re Refco*, 505 F.3d at 118–19 (party-in-interest standing does not extend to parties asserting purely derivative rights).

The Bankruptcy Court explained on the record that its standing ruling rested not on a categorical exclusion of family members, but on the absence here of any presently held, legally protected interest and the existence of a parallel state-court protection scheme. (Sale Mot. Hr'g Tr. at 32:2–33:21.)

**B. The Guardianship Court-Appointed Fiduciaries Represented the Owner's Interest**

Critically, the Guardianship Proceeding placed responsibility for Mr. Silverberg's property interests in the hands of a Temporary Guardian and a Temporary Receiver, and the Guardianship Court expressly authorized the Temporary Receiver to prosecute a sale subject to Bankruptcy Court approval. (Guardianship Order Authorizing Sale at 4) (approving the proposed sale "subject to the approval of the Bankruptcy Court"); Consent Order ¶ 12.) The Temporary Receiver's motion to dismiss was withdrawn with prejudice, and the Temporary Receiver agreed to act cooperatively as "joint operations manager" for the Debtor; the Consent Order explicitly contemplated engagement of a broker and a sale process to be brought before the Bankruptcy Court. (Consent Order ¶¶ 6, 12.)

The Consent Order and the CLO Retention Order together show that Mr. Silverberg's property interests were indeed being actively and formally managed by court-appointed

7

fiduciaries: the Guardianship Court authorized the Temporary Receiver's cooperative role with the Debtor in the Chapter 11 case (Sale Mot. Hr'g Tr. at 17:5–13), the CLO Retention Order formalized a court-appointed officer to oversee marketing and the sale process (*see* CLO Retention Order), and the Marano and Arora-Akarte declarations in the Sale Motion describe the marketing campaign, the execution of the Sale Agreement, and the $5,000,000 non-refundable deposit accompanying the initial $22,501,000 offer. (Marano Decl. ¶ 26; Arora-Akarte Decl. ¶ 21)

This Court gives practical weight to the Guardianship Court's allocation of authority. Where a competent state court has placed property interests in the hands of fiduciaries (*i.e.*, a guardian and receiver) who act with authority and who cooperated in the Chapter 11 sale process, the bankruptcy forum appropriately defers to those state-court appointments and to the mechanisms the state court put in place to protect the ward's property. This approach is consistent with the Third Circuit's pragmatic § 1109(b) analysis, which protects those with a present, legally protected interest and declines to extend participation to speculative future claimants—particularly where state-court fiduciaries are actively representing the owner's interests. *In re Global*, 645 F.3d at 201; *In re Refco*, 505 F.3d at 109.[4]

Where the owner's property interests are being actively represented by fiduciaries appointed by a competent state tribunal—and those fiduciaries have authority to act and have

---

[4] As the Second Circuit explained in *Refco*, "[t]o the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else." 505 F.3d at 117. There, investors who maintained a financial interest lacked standing because control of those interests rested with the entity's authorized decisionmakers. *Id*. at 117–18. The same principle applies where a state court has vested authority in court-appointed fiduciaries whose actions are subject to bankruptcy court oversight. Examples of a party in interest not specifically listed in Section 1109(b) include governmental and regulatory authorities with supervisory responsibilities over the debtor's business or financial affairs.  See *In re Co Petro Mktg. Group, Inc.*, 680 F.2d 566, 572, 7 C.B.C.2d 128 (9th Cir. 1982); see also *Peachtree Lane Assocs. v. Granader (In re Peachtree Lane Assocs.)*, 188 B.R. 815, 826–27 (N.D. Ill. 1995); *Unofficial Comm. of Zero Coupon Noteholders v. Grand Union Co.*, 179 B.R. 56, 59 (D. Del. 1995); *Ault v. Emblem Corp. (In re Wolf Creek Valley Met. Dist. No. IV)*, 138 B.R. 610, 615 (D. Colo. 1992); *In re Public Serv. Co. of New Hampshire*, 88 B.R. 546, 555 (Bankr. D.N.H. 1988); *In re UNR Indus., Inc.*, 71 B.R. 467, 471 (Bankr. N.D. Ill. 1987).

cooperated with the bankruptcy court—there is no statutory or prudential compulsion to admit a separate, presently unappointed guardian who lacks a present legal stake. Allowing such intervention would undermine the guardianship court's allocation of responsibilities and risk duplicative advocacy on materially identical issues. *See In re Refco*, 505 F.3d at 117 n.9 ("[p]arty in interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding.") (citation omitted).

## C. Insider Status and Familial Ties Do Not Convert a Contingent Interest into Standing

Appellant's alternative argument—based on her familial relation to the Debtor's owner and on an asserted "insider" status—does not alter the analysis. (Appellant's Opening Br. at 22-23.) Insider status alone is not a talisman that converts a family member's concern into a legally protected, pecuniary interest under § 1109(b). The Bankruptcy Court correctly observed that § 1109(b) does not automatically confer standing on relatives of shareholders, particularly where those shareholders are living, and their property interests are represented by court-appointed fiduciaries. (Sale Mot. Hr'g Tr. at 32:11–33:1.) This is consistent with binding authority that requires a present, direct stake in the estate to confer party-in-interest status. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).

## D. Appellant Was Given Procedural Opportunities; the Sale Was Conducted on the Record

Appellant additionally contends she had inadequate discovery and insufficient opportunity to contest the sale. (Appellant's Opening Br. at 4, 29.) The record shows that she filed discovery demands and a formal objection; the broker and Temporary Receiver produced marketing materials to her; and the parties exchanged letters about discovery and confidentiality before the hearing. (Notice of Appearance & Objection; Discovery Dispute Letter, Bankr. No. 23-11467; Temporary Receiver & Debtor Discovery Dispute Letter, Bankr. No. 23-11467.)

9

At the September 11 hearing, the Bankruptcy Court heard testimony from the CLO, the purchaser, and a potential overbidder; the Court permitted a recess and allowed bid improvement, after which the purchaser increased its price to $24,000,000, and the Court approved the sale on the record, finding the marketing, bidding, and purchase price sufficient to satisfy the relevant standards for good faith, proper notice, and fair value. (Sale Mot. Hr'g Tr. at 38–45; 48–55; 64:19–70:15; 74:22–23; 77:25–78:8.) In other words, the sale hearing was conducted on the record. The record reflects competitive bidding and an upward bid adjustment by the purchaser; the Bankruptcy Court found the marketing and bidding process sufficient before approving the sale; and the sale order thereafter memorialized approval of the transaction. (*Id.*; Order Approving Sale Mot., Bankr. No. 23-11467, ECF No. 110-4).

Nothing in the record demonstrates that Appellant's lack of party-in-interest status caused a procedural deprivation that was arbitrary or that materially altered the outcome of the sale process. The Court received direct testimony about the condition of the property, marketing efforts, offers received, and the purchaser's readiness and ability to proceed; the transcript records the Court's considered judgment. (*See* Marano Decl. ¶¶ 21-24, 28, 31 (describing marketing, deposit, and purchaser readiness); Arora-Akarte Decl. ¶¶ 6-19, 21 (describing Acadia marketing campaign and offers); Sale Mot. Hr'g Tr. at 38–45, 53:3–10, 65:16–66:21 (on-the-record testimony addressing these topics)).

Even assuming, *arguendo*, that the Bankruptcy Court erred in denying Appellant party-in-interest status, any such error would be harmless. The record shows a full evidentiary sale hearing in which the CLO, the purchaser, and an overbidder testified; the purchaser improved its offer to $24,000,000 on the record; and the Bankruptcy Court expressly found that the sale process was adequately marketed and conducted in good faith. Federal practice permits correction of non-

prejudicial errors that do not affect substantial rights, and courts routinely decline to unwind sales where the record demonstrates adequate notice, marketing, competitive bidding, and a reliable finding of fair value. *See* Fed. R. Civ. P. 61; Fed. R. Bankr. P. 9005.

### E. Equity Does Not Displace Statutory Standing Limits

Appellant invokes equitable concerns—but equitable sympathy for an incapacitated person's future guardian does not enlarge a statutory entitlement to be heard. Section 1109(b) already provides broad participatory rights to those whose interests are directly implicated; it does not, however, create a right for every plausible future stakeholder. Expanding standing here would risk proliferating interventions and would intrude upon the Guardianship Court's allocation of authority. The bankruptcy record, including the Consent Order, CLO Retention Order, Sale Motion, guardian/receiver participation, and the hearing transcript, supports the Bankruptcy Court's determination that the owner's interests were fairly represented and that the sale process satisfied the applicable standards.

## IV. CONCLUSION

For the foregoing reasons, Appellant's appeal (ECF No. 1) is **DENIED**, and the Bankruptcy Court's Oral Order denying Appellant standing and approving the sale is **AFFIRMED**. An appropriate order accompanies this Opinion.

**DATED:** March 19, 2026

JULIEN XAVIER NEALS
United States District Judge